BOARD OF EDUCATION OF THE TOWNSHIP OF WILLINGBORO, PETITIONER-APPELLANT, v. EMPLOYEES ASSOCIATION OF WILLINGBORO SCHOOLS, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1981—Decided April 22, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*John T. Barbour* argued the cause for appellant (*Barbour & Costa*, attorneys; *John T. Barbour*, on the brief).

*Joel S. Selikoff* argued the cause for respondent (*Selikoff & Cohen*, attorneys; *Joel S. Selikoff*, of counsel; *Henry S. Maurer, Jr.* on the brief).

*Sidney H. Lehmann*, General Counsel for Public Employment Relations Commission, filed a statement in lieu of brief.

The opinion of the court was delivered by

FRITZ, P. J. A. D.

The sole issue raised on this appeal involves the retroactivity *vel non* of a prior ruling of the Public Employment Relations Commission (PERC) that "a parity clause in a collective negotiations agreement constitutes an unfair practice within the meaning of *N.J.S.A.* 34:13A–5.4(a)(1) and (5) because it unlawfully limits the right of an employee organization to negotiate fully its own terms and conditions of employment." *City of Plainfield*, PERC No. 78–87, 4 *NJPER* 255 (1978). In that opinion

PERC also declared, "Parity clauses must be and *shall henceforth be* illegal subjects for negotiations . . . ." *Id.* at 256. (Emphasis supplied.)

In the matter before us PERC refused to make that ruling retroactive, and it is that of which the board of education here complains. It is its thesis that a contractual provision which normally would be an illegal topic for collective negotiations cannot be declared legal and enforceable according to when it was negotiated. We disagree and affirm.

It is to be observed at the outset that the parity clause involved the health insurance benefit program, a clearly negotiable condition of employment. We emphasize this fact in order that the problem at hand may not be improperly obfuscated or made more complex by any suggestion that the "illegality" which is charged inheres from the educational policy—working condition Dichotomy established by the so-called *Dunellen (Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N.J.* 17 (1973))* trilogy, since considered at length in *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 *N.J.* 144 (1978). The only illegality with which we are here concerned is that of any parity clause since the determination in *Plainfield.* There is nothing before us to suggest that the parity clause was thought to be unlawful, nonnegotiable or nonarbitrable prior to the *Plainfield* decision. The managerial prerogative or educational policy cases cited by the appellant board of education are not apposite.

In its reconsideration in *In re City of Jersey City,* PERC No. 80–113, 6 *NJPER* 177 (1980), PERC determined that parity clauses were not "illegal" prior to its decision in *Plainfield.* It recited cogent reasons for this determination. Accordingly, it came to the conclusion that a parity clause in a contract entered into and fully performed by July 5, 1978, the date of the *Plainfield* decision, was not to be denied arbitration on account of the "illegality" declared in *Plainfield.* It said:

... There is a well established principle of general contract law, which the Commission finds applicable herein, that the validity and enforceability of a contract is determined by the law in effect at the time the contract was entered into. Accordingly, a subsequent change in the law cannot make an agreement illegal which was legal when it was made. *Silverstein v. Keane,* 19 *N.J.* 1, *Deerhurst Estates v. Meadow Homes, Inc.,* 64 *N.J.Super.* 134, on remand 71 *N.J.Super.* 255, *Gibraltor Factors Corp. v. Slapo,* 41 *N.J.Super.* 381, aff'd 23 *N.J.* 459. It is equally established that, notwithstanding a contract's legality when made, if such an agreement is subsequently prohibited as a matter of law, the contract's continued performance is illegal and neither party can recover for a breach of the contract which occurred subsequent to the change in the law. *Pittsburgh Plate Glass Co. v. Jarrett,* 42 F.Supp. 723, modified on other grounds, 131 F.2d 674, see generally *Kugler v. Koscat Interplanetary, Inc.,* 120 *N.J.Super.* 216, *Oates v. E. Bergen County Multi-Listing Service,* 113 *N.J.Super.* 371. On both points of contract law see generally 17 C.J.S. Contracts, §§ 22 and 24.

In applying these points of law to the facts in this case, it is clear that the contract in dispute was entered into at a time when parity provisions were not illegal. Moreover, although the issue of its enforcement is now before the court, performance of the clause was to have been totally completed prior to the time the *Plainfield* decision was issued. [6 NJPER at 180]

■ We are satisfied that this statement is generally correct, at least with respect to objectives not *mala in se.* A decision of first impression or of novel or unexpected impact, or one representing a significant change in the law, may well require prospective application. *Merenoff v. Merenoff,* 76 *N.J.* 535, 560 (1978). PERC determined that the change respecting parity clauses was such a change. Even without according special deference to the expertise of the agency in the management of labor contracts (*see State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 83–84 (1978), *Boyle v. Riti,* 175 *N.J.Super.* 158, 166 (App.Div.1980); *but see Irvington Policemen's Benev. Ass'n 29 v. Irvington,* 170 *N.J.Super.* 539 (App.Div.1979), certif. den. 82 *N.J.* 296 (1980), distinguishable here in any event), we see no reason to disturb this conclusion. Our judgment concurs.

The contract in question qualifies for arbitration. The only period in question commenced February 1, 1978 and concluded June 30, 1978, entirely before the pronouncement in *Plainfield.*

Affirmed.