190 N.J. Super. 118 (1983)
462 A.2d 186
SUSAN PASCARELLA, ET AL., PLAINTIFFS-RESPONDENTS,
v.
HAROLD M. BRUCK, M.D., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 16, 1983.
Decided June 14, 1983.
*120 Before Judges ARD, KING and McELROY.
Dughi & Hewit, attorneys for appellants (Russell L. Hewit, on the brief).
Vincent N. Marino, attorney for respondents.
The opinion of the court was delivered by McELROY, J.A.D.
This matter comes to us on our grant to defendant[1] of leave to appeal a decision by the trial court setting aside a settlement of $25,000 in this medical malpractice suit.
The matter had gone the route of our R. 4:21 practice. The panel unanimously found for defendant. A trial resulted in a jury disagreement. On the date of the second trial, after the case had been assigned to a judge but before a jury had been selected, counsel for the parties reached a settlement of $25,000, acceptable to the parties. Counsel so advised the trial judge and the case was marked "settled" by the clerk. As part of the settlement it was understood that defendant was not admitting *121 fault and that a settlement agreement to be drawn by defense counsel would reflect this condition. The agreement was not put on the record.
The oral agreement of settlement was made on September 13, 1982 and defendants' counsel prepared the closing papers which plaintiffs' attorney received on September 15, 1982. In the interim plaintiffs returned to their home and had a change of mind. On the morning of September 16 plaintiff Susan Pascarella telephoned her attorney and refused to go through with the settlement. It is to be noted that at this time she had not seen the settlement agreement. She told her counsel that the settlement had been made while she was emotionally pressed.
Susan Pascarella's affidavit, filed in support of her motion to vacate the settlement, reflected the following:
(1) Prior to the day of trial and settlement (we are not told precisely when) her mother had died and plaintiff was "greatly preoccupied with trying to get her affairs in order while at the same time suffering from bronchitis, which has been affecting me ever since my vocal chord was paralyzed [apparently referring to the operation by defendant five years prior to September 13, 1982]"; (2) "[b]ecause of the situation, I now feel I was quite vulnerable to suggestions, propositions, and terms ... and did not properly reflect upon the situation" [emphasis supplied]; (3) "[a]lthough I do not mean to indicate that anyone forced their will upon me, I felt pressured to make a quick decision so that the proceeding would not be held up"; (4) she did not know why she had indicated that the settlement was acceptable, and (5) on arrival home she had been "quite confused" and had determined that she could not "in good conscience" accept "the proposals" and had so advised her attorney.
Her husband Alfred Pascarella's affidavit focused upon his disagreement with the later written settlement agreement. He stated that he was "greatly offended by the language which [he] believed to be a vindication of Dr. Bruck." Lastly, he concluded *122 that he believed his wife and he had "made a hasty decision" without "proper reflection."
The objection of plaintiffs to the settlement agreement is to paragraph 4 which reads:
The fact of settlement shall in no way indicate or infer that the defendant treated the female plaintiff improperly in any fashion. The fact of settlement shall not constitute an admission of liability or wrongdoing on the part of defendant. The plaintiffs acknowledge that the defendant contends that his care, treatment and advise to the female plaintiff were proper and in accordance with the highest standards of medical care.
The certification of plaintiffs' counsel clearly indicates that an oral settlement agreement was made at the courthouse. In pertinent part it stated:
5. Russell Hewit, Esq., as attorney for the Defendant and I commenced active settlement negotiations during the morning of September 13, 1982 at which time Judge Van Tassel was made knowledgeable of the situation and did confer with both Counsel from time to time relative to any progress being made.
6. Through a continuous process with defense counsel and continuous discussion with Susan Pascarella and Alfred Pascarella, her husband; who were present; a settlement figure of $25,000.00 was arrived at and accepted by the Plaintiffs at which time Judge Van Tassell was notified. Russell Hewit, Esq. indicated that he would be submitting a Settlement Agreement along with a General Release and Stipulation of Dismissal with prejudice. I advised him that the Settlement Agreement should in no way indicate that the Plaintiffs were waiving their claim of liability or negligence against the Defendant but that the continuance by the Defendant of his denial of liability could be stated therein. The terms of settlement were not spread upon the record by consent of Counsel.
Plaintiffs' motion to vacate the settlement and restore the matter to the trial calendar was heard on October 8, 1982. No testimony was taken. We have not been supplied a transcript of that hearing. The court vacated the settlement. It appears that due to a bureaucratic slipup the defendants' answering papers, which were delivered directly to the judge's chambers, were not seen by the judge before he ruled. Upon learning of this, defendant moved for reconsideration and oral argument on the issue was heard November 5, 1982. We have a transcript of that hearing, in which the judge ruled as follows:
THE COURT: It was a settlement agreement that was negotiated between the parties at the time of a date for trial before this Court. The Court had no hand in any of those negotiations but was advised on several occasions that the *123 negotiations were going on, and in fact they reached a settlement which they had in an oral form but which had to be put into a written form. There was no situation where the parties were then asked to take the stand or to stand up in court and say whether they agreed with it or whether they didn't, what were the terms and so forth and none of that was done.
I look at that type of a settlement a little bit differently than the type that comes before this Court where the parties are  where the settlement is placed right on the record and the people are asked exactly what their feelings are and why and so forth, and it is gone over. Now, I have an affidavit that indicates that even the very day or the next day the party says that because of an emotional upsetment and tension and so forth she gave in too quickly to what was going on and agreed to do it without proper reflection, I should say. Also, she says that  well, if it was only a question of the paragraph that had to do with Dr. Bruck with guilt or something like that, I'm sure you could work it out. I would be happy to give you a form of order that would protect everybody in that situation. But, that is not it. That is not the situation.
This case has got to be tried, so I suggest we do it and I will make the same order as I did before. I will set aside the settlement and we will go to trial on it and see what happens.
....
DEFENDANT'S COUNSEL: Your Honor, just so I understand, the basis you are relying on is that the plaintiff was too emotionally upset to come to an agreement at the time?
THE COURT: I'm saying that where you entered into a settlement not placed on the record before a Court which is contingent upon what is being agreed to being reduced to writing the party then has second thoughts before anything is signed, you don't really have any agreement to settle. You didn't in this case.
DEFENDANT'S COUNSEL: Your Honor, I'd just like to say one thing that I don't think there has been any certification by any of the parties here that their oral agreement was contingent upon the submission of a writing. Rather, the parties came to an oral agreement and then they, in the natural course of things, agreed to reduce that to a writing.
THE COURT: I point this out to you, sir, that when you get a client in a case of a medical malpractice and you are going to put things in about nondisclosure of the terms and other things about the doctor and you are going to reduce that to writing, then you better be very careful that you put it on the record and preserve it all before you go back and start typing it up. I don't think that you have any settlement in the case on that basis.
The trial judge did not invalidate the settlement as an exercise of judicial discretion. It appears from the foregoing that he regarded the oral settlement agreement as not a binding contract because (1) the judge had had "no hand in any of [the] negotiations"; (2) the settlement was "in an oral form" and had to be put in written form," and (3) the settlement had not been *124 placed upon the court's record. Despite the fact that neither party contended that the oral agreement was contingent upon being reduced to written form, the trial judge apparently felt that the oral agreement either had to be preserved upon the court record or else it was ineffective as a settlement. In so holding he erred.
This was a settlement agreement made between competent adults. There is no legal requirement that there be court approval in such a case, DeCaro v. DeCaro, 13 N.J. 36, 43 (1953), and the practice of spreading the terms of the agreement upon the record, although a familiar practice, is not a procedure requisite to enforcement. That the agreement to settle was orally made is of no consequence, and the failure to do no more than, as here, inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition. In Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3 Cir.1971), it was held that an "agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing." Accord Good v. Pennsylvania R.R., 384 F.2d 989, 990 (3 Cir.1967); Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 802-803 (3 Cir.1962), cert. den. 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962). We adopt these principles as consistent with the announced public policy of the jurisdiction favoring settlement of litigation. Settlements of this nature are entered into daily in our courthouse corridors and conference rooms, the court only aware, until informed of the fact of settlement, that counsel and the parties are working toward that desirable end. Adoption of a principle that such agreements are subject to attack because they were not placed upon the record places in unnecessary jeopardy the very concept of settlement and the process by which settlement of litigation is ordinarily achieved.
An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, *125 absent a demonstration of "fraud or other compelling circumstances," should honor and enforce as it does other contracts. Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974). Indeed, "settlement of litigation ranks high in our public policy." Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.Div.), certif. den. 35 N.J. 61 (1961). Moreover, courts will not ordinarily inquire into the adequacy or inadequacy of the consideration underlying a compromise settlement fairly and deliberately made. DeCaro v. DeCaro, supra. In that case Justice Jacobs observed that where there is no showing of "artifice or deception, lack of independent advice, abuse of confidential relation, or similar indicia generally found in the reported instances where equity has declined to enforce, as unfair or unconscionable, an agreement voluntarily executed by the parties," the agreement should be enforced. 13 N.J. at 44. It is only where the inadequacy of consideration is grossly shocking to the conscience of the court that it will interfere. Justice Jacobs noted:
Inadequacy of consideration standing alone has often been said to be insufficient to avoid specific performance of an otherwise valid agreement. See Trenton Street Ry. Co. v. Lawlor, 74 N.J. Eq. 828, 832 (E. & A. 1908), where Justice Trenchard flatly stated that the "court will not inquire into the adequacy or inadequacy of the consideration of a compromise fairly and deliberately made." See also Grandin v. Grandin, [49 N.J.L. 508, 514 (Sup.Ct. 1887)]; Phillips v. Pullen, 45 N.J. Eq. 5, 7 (Ch. 1889), affirmed 45 N.J. Eq. 830, 836 (E. & A. 1889); Elmora Development Co. v. Horwitz, 2 N.J. Misc. 694, 699 (Ch. 1924), affirmed 98 N.J. Eq. 690 (E. & A. 1925); Chubb v. Peckham, 13 N.J. Eq. 207, 210 (Ch. 1860). Nevertheless there are decisions in our State and elsewhere which support the doctrine that if the inadequacy of the consideration is so gross as to shock its conscience, the court will decline to enforce the agreement "upon the ground that such inadequacy amounts to conclusive evidence of fraud." Phillips v. Pullen, supra, [45 N.J. Eq.] at 8; Panco v. Rogers, 19 N.J. Super. 12, 19 (Ch.Div. 1952); 5 Williston, Contracts (Rev. ed. 1937), § 1428. We may accept this doctrine without necessarily approving its stated ground. Where fraud is wholly absent, it seems anachronistic to rest judicial action on its supposed presence. However, as Professor Williston has pointed out, the denial of specific performance where the inadequacy of the consideration is shocking, may readily be rested upon the numerous cases in equity "which assert that the remedy is discretionary, and that harsh or unfair contracts will not be enforced." Williston, supra, § 1428, at 4000. See Restatement, Contracts, § 367 (1932) and N.J.Annot. § 367 (1936). [DeCaro, supra, 13 N.J. at 44-45.]
*126 In the instant case there is nothing in the record evincing any such shocking inadequacy of consideration. Plaintiff's bare assertion in her affidavit that she considered $25,000 "a cheap price tag on [her] health which has been permanently impaired," suggests a layman's afterthought and no more. A compromise is the end product of deliberation as to more than injury. It involves the skillful judgment of counsel as to liability and other factors inherent in a medical malpractice case, his explanation of these and other hazards of litigation to the client and the client's recognition of them. Plaintiff Susan Pascarella, we note, admits that her will was not overborne and the record reflects an initial agreement by her, her husband and experienced counsel that, all things considered, the settlement was a fair disposition. The bargain clearly was struck. If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand.
Nor are we swayed by the fact that plaintiffs assert that paragraph four of the settlement agreement does not reflect words plaintiffs would, perhaps, rather have chosen. The sequence was that plaintiffs sought to void the settlement even before having seen this paragraph. It is clear that paragraph four is not the underlying cause of dissatisfaction, rather it was seized upon as a device. The affidavit of plaintiffs' attorney clearly states that orally "a settlement figure of $25,000 was arrived at and accepted by the Plaintiffs." That the agreement was to be memorialized in writing makes it no less a contract where, as here, the parties concluded an agreement by which they intended to be bound. Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 374 (App.Div. 1975); Comerata v. Chaumount, Inc., 52 N.J. Super. 299, 305 (App.Div. 1958). The latter case clearly holds that "parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." Ibid. That is what was done here, the only thing to be worked *127 out was, as the affidavit of plaintiffs' counsel concedes, that plaintiffs not "waive their claim of liability or negligence against defendant but that the continuance of the defendant of his denial of liability could be stated therein." Paragraph 4 of the written agreement is of that character.
The order of the Law Division vacating the settlement is reversed and vacated. The matter is remanded with directions that defendant's counsel prepare and the court enter an order enforcing the settlement, setting a reasonable time for defendant to deposit the $25,000 into court and entry of an order of dismissal of the suit with prejudice, upon this deposit. The order shall provide that plaintiffs may withdraw the monies upon condition they sign a general release and the settlement agreement. Should plaintiffs fail to do so, the court may entertain a motion by plaintiffs' counsel for the withdrawal of his counsel fees and reimbursable expenses from the deposit in court.
Reversed and remanded. Jurisdiction is not retained.
NOTES
[1] Doctors Heilbrum and Doromal were dismissed from the case after discovery was had.