741 A.2d 599 (1999)
326 N.J. Super. 372
John ZUCCARELLI, III, Lillian Zuccarelli, and John Zucarelli, Appellants,
v.
STATE of New Jersey, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1999.
Decided December 13, 1999.
*600 Patrick D. Kennedy, for appellants (Hill Wallack, Princeton, attorney; Mr. Kennedy, T. Gary Mitchell and Maeve E. Cannon, Princeton, of counsel and on the brief; Anthony L. Velasquez, Princeton, on the brief).
Susan J. Vercheak, Deputy Attorney General, for respondent (John J. Farmer, Jr., Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Vercheak, on the brief).
Before Judges MUIR, Jr., WALLACE, Jr. and CUFF.
The opinion of the court was delivered by WALLACE, Jr., J.A.D.
Appellants, John Zuccarelli, III (Zuccarelli, III) and Lillian and John Zuccarelli (Zuccarelli) appeal from a decision and order of the Commissioner of the Department of Environmental Protection (DEP), denying their application to reopen and vacate a 1992 settlement agreement. In their appeal, appellants contend: (1) the unconstitutionality of the waste flow regulations mandates voiding or substantially modifying the agency order adopting the settlement agreement; (2) Zuccarelli, III is entitled to reimbursement for the monetary penalties paid based on the unconstitutional waste flow regulations; (3) the Commissioner's failure to grant a hearing strips Zuccarelli, III of his vested property right in his license and renders the decision arbitrary, capricious, and unreasonable; and (4) they clearly have standing. We disagree with these contentions and affirm.

I
Zuccarelli, III was President, sole owner, and sole stockholder of National Waste Disposal, Inc. (National Waste), a solid waste collector. In 1988 and 1989, the DEP initiated two administrative enforcement actions against both National Waste and Zuccarelli, III for violations that included: (1) the operation of multiple, unlicensed solid waste facilities; (2) the violation of tariff requirements under the solid waste flow regulations; (3) the falsification of waste origin and disposal forms; and (4) the failure to follow intradistrict solid waste flow plans.
In the first matter captioned, Department of Environmental Protection and *601 Energy, Divisions of Solid Waste Management and Hazardous Waste Management v. National Waste Disposal, Inc. OAL Dkt. Nos. ESW 8300-88, ESW 3265-89, EHW 9221-89 and ESW 9458-90 (consolidated)(decided January 6, 1992), the Administrative Law Judge (ALJ) found that National Waste and Zuccarelli, III "had engaged in wholesale and egregious violations" of the rules and regulations governing solid waste and recommended a fine of $6,016,286, revocation of National Waste's solid waste collection license, and debarment of Zuccarelli, III from the solid waste industry. Approximately $4,620,775 of the monetary penalty was attributed to waste flow violations, while the remaining $1,395,511 monetary penalty was attributed to the ALJ's findings that National Waste had operated at least four solid waste transfer stations without any engineering design approval. In addition, the ALJ found violations of asbestos disposal requirements and that National Waste falsified origin and destination documents.
In the second action captioned, In the Matter of Allegations of Violations of Law and the Administrative Code by National Waste Disposal, Inc. and John M. Zuccarelli, III, individually and as President and Sole Owner of National Waste Disposal, Inc. OAL Dkt. No. ESW 3740-90 (decided June 26, 1992), another ALJ found that appellants had falsified origin and destination forms, violated the tariff regulations by overcharging, and violated the solid waste flow rules. The ALJ recommended imposing penalties of $479,000 and a one-year continuance of National Waste's Certificate of Public Convenience and Necessity while the Company operated under the general supervision of the DEP.
While these matters were pending before the Commissioner, the parties reached a final settlement agreement on November 25, 1992. By order dated December 4, 1992, the Commissioner affirmed the terms of the settlement "as just and reasonable and as disposing of all issues in both cases." The principle terms of the settlement agreement provided that: (1) National Waste could operate for three years from the date of settlement, but the Company would have to be sold to a buyer approved by the DEP on or before December 31, 1995; (2) National Waste would cease operations no later than January 1, 1996, irrespective of whether a sale had been consummated; (3) National Waste would pay a monetary penalty of $3.5 million; and (4) Zuccarelli, III would not participate in the solid waste and recycling business for a period of five years following the cessation of National Waste's operations. Some of the other numerous provisions in the settlement agreement limit the appellants' ability to contest the terms and conditions of the settlement and prohibit Zuccarelli, III's parents from purchasing the Company from him.
Following approval of the settlement agreement, several significant court decisions affected the validity of New Jersey's waste flow regulatory scheme. On May 16, 1994, the United States Supreme Court held that a local New York waste flow control ordinance violated the Commerce Clause. C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 389-95, 114 S.Ct. 1677, 1681-84, 128 L.Ed.2d 399, 407-10 (1994). Following the C & A Carbone decision, the Third Circuit Court of Appeals concluded that New Jersey's "waste flow regulations discriminate against interstate commerce on their face or in effect," and remanded the matter to the District Court for a determination whether those regulations could survive application of the "heightened scrutiny test" for constitutionality under the Commerce Clause as set forth in C & A Carbone. Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 48 F.3d 701, 717-18 (3d Cir.1995) (Atlantic Coast I).
Following the remand, on July 15, 1996, the District Court applied the "heightened scrutiny test" of Commerce Clause constitutional analysis and determined that *602 "New Jersey's system of flow control of waste violates the Commerce Clause of the United States Constitution." Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders of Atlantic County, 931 F.Supp. 341, 358 (D.N.J.1996) (Atlantic Coast II). On May 1, 1997, the Third Circuit affirmed the District Court's conclusion that New Jersey's present waste flow control system is unconstitutional under the Commerce Clause of the United States Constitution. Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 112 F.3d 652, 673 (3d Cir.1997) (Atlantic Coast III).[1] The United States Supreme Court denied certiorari on November 10, 1997, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 316 (1997).
As a result of these decisions, Zuccarelli, III and National Waste filed an action in federal district court seeking reconsideration of the terms of the settlement agreement since the solid waste flow rules which National Waste allegedly violated had been declared unconstitutional. The complaint was dismissed for lack of jurisdiction and the Third Circuit affirmed on appeal. John Zuccarelli, III v. Robert C. Shinn, Jr., 74 F.3d 1229 (3d Cir. 1995).
On November 5, 1997, we decided the appeal in In re Fiore & Sons, Inc., 305 N.J.Super. 192, 701 A.2d 1303 (App.Div. 1997). In Fiore, a solid waste hauler appealed from a decision of the Commissioner of DEP assessing a monetary penalty, revoking the Corporation's Certificate of Public Convenience and Necessity, and ordering permanent debarment of the individual owners from participating in the solid waste industry in New Jersey. Id. at 194, 701 A.2d 1303. We held the unconstitutionality of New Jersey's waste flow regulations should be applied retroactively in that case. Id. at 204-05, 701 A.2d 1303. On appeal, the New Jersey Supreme Court affirmed our decision, holding that "Carbone and Atlantic Coast II should apply retroactively to cases in the pipeline challenging those aspects of the State's waste flow regulations that discriminate against interstate commerce." In re A. Fiore & Sons, Inc., 158 N.J. 105, 107, 726 A.2d 1289 (1999).
Meanwhile, after our decision in Fiore, Zuccarelli, III sent a letter dated December 12, 1997 to the Commissioner of DEP requesting a review of the November 25, 1992 settlement agreement and order affirming the settlement. Thereafter, appellants:
petitioned the Department to determine that all punitive aspects of the settlement agreement be deemed void and unenforceable, that a hearing be conducted to determine the Zuccarellis' rights to reimbursement of all settlement monies directly attributable to waste flow violations, that the debarment of the Zuccarellis from the solid waste industry be deemed void and that any impediment to the right of the Zuccarellis to engage in the solid waste industry be lifted.
The Commissioner denied the petition, concluding that appellants could have continued their litigation on the merits in 1992, but instead opted for a comprehensive settlement. Further, the Commissioner noted that the continuing five-year debarment period of Zuccarelli, III did not justify revisiting the settlement agreement. Finally, the Commissioner explained that in addition to the waste flow violations, appellants had "established an egregious record of regulatory violations." This appeal followed.
While this appeal was pending, the DEP moved for summary disposition of the appeal, arguing that the New Jersey Supreme Court's decision in A. Fiore & Sons supported its position against retroactive *603 application of the Atlantic Coast trilogy. We denied the motion.

II
In this appeal, appellants contend the unconstitutionality of the waste flow regulations should be given retroactive application to either void or modify the terms of the settlement agreement. DEP submits the retroactive effect of Atlantic Coast II has been limited to waste flow cases still pending on appeal. Moreover, since appellants settled their cases and chose not to appeal, DEP argues that our strong public policy favoring the enforcement of settlement agreements should apply to deny appellants' relief.
The central issue is whether the unconstitutional waste flow regulations should be applied retroactively to appellants who reached a comprehensive settlement agreement, based in part, on charges for waste flow violations.
In deciding to give retroactive application to the Atlantic Coast II ruling in Fiore, we were guided by Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) and Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). We expressed that:
Both Reynoldsville and Harper clearly point to retroactive application. As stated in Harper: When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.
[305 N.J.Super. at 204, 701 A.2d 1303 (emphasis added).]
See also Reynoldsville, supra, 514 U.S. at 758, 115 S.Ct. at 1751, 131 L.Ed.2d at 830 ("New legal principles, even when applied retroactively, do not apply to cases already closed.")
In the case of State v. Knight, our Supreme Court discussed the four options available when determining the retroactive effect of a new rule:
The Court may decide to apply the new rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. Alternatively, the Court may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth. A third option is to give the new rule "pipeline retroactivity," rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Finally, the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgment have been entered and all other avenues of appeal have been exhausted.
[145 N.J. 233, 249, 678 A.2d 642 (1996).]
Further, the Court noted that in deciding whether to apply a new rule retroactively, a court should consider the purpose of the new rule and the effect a retroactive application would have on the administration of justice. Id. at 251, 678 A.2d 642; see also State v. Purnell, 161 N.J. 44, 56, 735 A.2d 513 (1999) (under retroactivity analysis, a court is required to "assess the impact that retroactive application of the new rule of law would have on the administration of justice").
Although the Knight Court was addressing the retroactive application of a new rule in a criminal setting, our Supreme Court has applied similar reasoning in the civil setting. In Olds v. Donnelly, 150 N.J. 424, 442, 696 A.2d 633 (1997), the Court abrogated its decision in Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995) and exempted attorney malpractice actions from the entire controversy doctrine. In addressing *604 whether the decision should be applied retroactively or prospectively, the Court stated:
Ordinarily, judicial decisions apply retroactively. Crespo v. Stapf, 128 N.J. 351, 367, 608 A.2d 241 (1992). Policy considerations may justify giving a decision limited retroactive effect. Ibid. The first consideration is whether litigants reasonably have relied on settled law in ordering their affairs. Id. at 368, 608 A.2d 241. Another consideration is whether retroactive application will advance the purposes of the rule announced in the decision. Id. at 370, 608 A.2d 241. "The final consideration is whether retroactive application would produce inequitable results and adversely affect the administration of justice." Id. at 371, 608 A.2d 241.

[Id. at 449, 696A.2d 633.]
In determining to give the Olds decision limited "pipeline" retroactivity, the Court explained that limited retroactivity would "adequately protect existing relationships." Id. at 450, 696 A.2d 633. Further, the Court noted that the application of pipeline retroactivity to pending cases "serves the interests of justice by permitting resolution of their claims on the merits." Id. Perhaps more importantly, the Court recognized that complete retroactive application potentially exposes the judicial system to the undue burden of revisiting numerous matters already concluded. Id.
Here, DEP urges that during the twenty-five year history of the waste flow regulations, "countless enforcement actions were brought, litigated, and either settled or decided", and that to permit those cases to be reopened would place an enormous strain on the judiciary. We find this argument compelling. We are satisfied that complete retroactivity would potentially place a tremendous burden on the judicial system in general, and on the DEP in particular. Under these circumstances, we find no justification to apply the principles of Atlantic Coast II beyond cases that are in the "pipeline."
We also note our strong public policy favoring the settlement of litigation. Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990) (quoting Jannarone v. W.T. Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.1961), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961)). Moreover, "a settlement agreement between parties to a lawsuit is a contract." Nolan, supra, 120 N.J. at 472, 577 A.2d 143 (citing Pascarella v. Bruck, 190 N.J.Super. 118, 124, 462 A.2d 186 (App.Div.1983), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983)). We noted in Pascarella that "an agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." Pascarella, supra, 190 N.J.Super. at 124-25, 462 A.2d 186; Hannigan v. Township of Old Bridge, 288 N.J.Super. 313, 319, 672 A.2d 257 (App. Div.1996), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996). Further, a subsequent change in the law is not a sufficient reason to rescind a settlement agreement. New Jersey Mfrs. v. O'Connell, 300 N.J.Super. 1, 7, 692 A.2d 51 (App.Div. 1997), certif. denied, 151 N.J. 75, 697 A.2d 547 (1997). Recognizing that settlement agreements are contracts governed by "general principles of contract law," the O'Connell court stated:
One of those common law principles is that a contract, valid at its inception, is not invalidated or eviscerated by a subsequent change in decisional or statutory law. The rationale underlying the premise is that the original terms of a contract incorporate the relevant law at the time the contract is made. Consequently, the contract should not be disturbed by subsequent changes in the law. A party is bound to the contract it made at the time, even if it turns out to be a poor deal.

[Id.]
*605 Clearly, the 1992 settlement agreement was not the product of fraud or misrepresentation. Moreover, appellants were not compelled to settle their cases in 1992. Instead, they could have contested the DEP's numerous claims and even raised the constitutional argument that was subsequently upheld in the Atlantic Coast cases. However, appellants elected to enter into a comprehensive settlement agreement which permitted them to continue operating for several years in order to find a suitable purchaser of their business. Consequently, we reject appellants' request to either modify or void the settlement agreement with DEP.
The decision of the Commissioner of DEP is affirmed.
NOTES
[1] On February 5, 1998, the Third Circuit issued an amendment to this opinion which adds additional language that is not relevant to this appeal. See 135 F.3d 891 (3d Cir. 1998).