749 A.2d 399 (2000)
330 N.J. Super. 241
Josephene DOMANSKE, Individually and as Administratrix and Administratrix Ad Prosequendum of the Estate of Jesse L. Domanski, Plaintiff-Appellant,
v.
RAPID-AMERICAN CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 2000.
Decided April 24, 2000.
*400 Robert T. Haefele, Woodbridge, for plaintiff-appellant (Wilentz, Goldman & Spitzer, attorneys; Mr. Haefele, on the brief).
Matthew E. Przywozny and Joel Slawotsky for defendant-respondent (Rubin Baum Levin Constant & Friedman, attorneys; Mr. Przywozny and Mr. Slawotsky, of counsel and on the brief).
Before Judges STERN, WEFING and STEINBERG.
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiff Josephene Domanske[1] appeals from the trial court's order granting summary judgment to defendant Rapid-American Corporation (Rapid). After a careful review of the record and consideration of the arguments advanced on appeal, we affirm.
In September 1993, Josephene began this suit for damages following the death of her husband Jesse from lung cancer. She joined only one defendant, Rapid. In 1998, Rapid filed a motion for summary judgment. It argued that her suit was barred under the terms of a release executed by Josephene and Jesse in 1990 in conjunction with the settlement of their claim for damages for Jesse's asbestosis. That release ran in favor of Celotex Corporation *401 (Celotex) and "its successors and predecessors in interest, heirs, and assigns." Rapid argued that it was a predecessor to Celotex and entitled to the protection afforded by the release. Josephene maintained that Rapid was a stranger to the release and received no benefit from it. The trial court accepted Rapid's position and granted the motion. This appeal resulted.
Josephene presents two arguments on appeal: that summary judgment should not have been granted because she did not intend, in 1990, to release any claims against Rapid, and secondly, that summary judgment should not have been granted because Rapid does not fit within the scope of the release.
It is necessary to set forth in some detail the corporate transactions which are at the bottom of the parties' dispute. They do not disagree about the transactions themselves, which are, for the most part, a matter of corporate record. Rather, they disagree about the significance of those transactions in terms of this case.
The history begins with Philip Carey Manufacturing Corporation ("Old Carey"), incorporated in Ohio in 1888. For nearly eighty years, "Old Carey" was engaged in the mining of asbestos and the manufacture and sale of asbestos-related products. By a plan of merger dated December 28, 1966 and effective June 1, 1967, "Old Carey" merged with and into Glen Alden Corporation (Glen Alden) and Glen Alden, the surviving corporation, assumed all the liabilities of "Old Carey." Prior to the effective date of the merger, Glen Alden created a new corporation, a whollyowned subsidiary, which became known as Philip Carey Manufacturing Corporation and later, Philip Carey Corporation ("New Carey"). When "Old Carey's" merger with Glen Alden was effective, Glen Alden immediately transferred to "New Carey" all the assets and liabilities it had received from "Old Carey." "New Carey," a wholly-owned subsidiary of Glen Alden, carried on the asbestos-related business of "Old Carey."
Several years later, in 1970, "New Carey" merged with Briggs Manufacturing Company (Briggs); Briggs, the surviving corporation, later changed its name to Panacon Corporation (Panacon) but remained a subsidiary of Glen Alden. In April 1972, Glen Alden sold all of its interests in Panacon to Celotex and in June 1972, Celotex merged Panacon into itself. As a result of the Panacon/Celotex merger, Celotex assumed all the liabilities of "Old Carey" that had been transferred to "New Carey" by Glen Alden in 1967.
Following the April 1972 sale to Celotex, Glen Alden had no further interest in "New Carey." Several months later, in October 1972, Glen Alden merged with an Ohio corporation named Rapid-American Corporation. Glen Alden was the surviving corporation but, concurrent with the merger, it changed its name to Rapid-American Corporation. The defendant to this action is a Delaware corporation and a successor to the survivor of the 1972 merger. We conclude by noting that this corporate history has been referred to in other New Jersey litigation. Brotherton v. Celotex Corp. 202 N.J.Super. 148, 493 A.2d 1337 (Law Div.1985).
Josephene's claims in this matter arise from the potential liabilities of "Old Carey." Josephene and Jesse lived in Millington, New Jersey, home to an asbestosshingle plant at which Jesse worked from 1936 through 1939. They maintained that Jesse continued to be exposed to asbestos on a regular and continuous basis even after leaving that employment, both because of the manner in which scrap from the plant was utilized throughout the town and because of his ordinary day-to-day contact with people who were employed at the plant.
In 1986, Jesse was diagnosed with asbestosis and in 1987, together with fourteen other plaintiffs, Jesse and Josephene filed suit for damages; they joined nine named defendants in that lawsuit, including *402 Celotex. Eventually, in 1990, Jesse and Josephene settled their claim for $65,000. A portion of the funds were contributed by Celotex and as part of that settlement, they executed the release in question here. Under the terms of that release, they specifically
covenant[ed] and agree[d] forever to refrain from bringing any suit or proceeding at law or in equity against Releasee [Celotex], its successors and predecessors in interest, heirs, and assigns, arising from any and all claims that Releasor ever had, now has or may develop in the future as a result of any claimed injuries or damages resulting from alleged exposure to asbestos fiber or products containing asbestos or dust therefrom....
Shortly after that settlement and release, Jesse was diagnosed with lung cancer. Josephene instituted this suit subsequent to his death.

A
We turn to Josephene's initial contention, that summary judgment was inappropriate because Jesse and Josephene did not intend to release Rapid when they executed this release. Josephene contends that Rapid had the burden to establish that it fit within the scope of the release and that it failed to meet that burden when it submitted nothing to counter Josephene's certification about her intent in 1990.
We are not persuaded, however. As we view the matter, the issue is one of contract interpretation, for a release is merely a form of contract and the general rules that apply to contract interpretation apply to releases. Cooper v. Borough of Wenonah, 977 F.Supp. 305, 311 (D.N.J. 1997). Under long-settled principles, the secret, unexpressed intent of a party cannot be used to vary the terms of an agreement. "A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that outwardly manifested." Brawer v. Brawer, 329 N.J.Super. 273, 283, 747 A.2d 790 (App.Div.2000), quoting Hagrish v. Olson, 254 N.J.Super. 133, 138, 603 A.2d 108 (App.Div.1992).
New Jersey has a long-standing public policy in favor of the negotiated settlement of disputes. Zuccarelli v. Department of Envtl. Protection, 326 N.J.Super. 372,380, 741 A.2d 599 (App.Div.1999); Pascarella v. Bruck, 190 N.J.Super. 118, 124, 462 A.2d 186 (App.Div.), certif. denied 94 N.J. 600, 468 A.2d 233 (1983). It would be contrary to that policy to permit a litigant, years later, to assert that he or she, at the time of executing the release, had an intent that had not been communicated to anyone else. Other parties to the litigation would have no realistic way to defeat that newlystated assertion.
In our view, the cases upon which Josephene relies are distinguishable and do not govern the present analysis. Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958) and Daily v. Somberg, 28 N.J. 372, 146 A.2d 676 (1958) involved claims against joint tortfeasors and successor tortfeasors, respectively. In Breen the seller and purchaser of real estate acted together to defeat a broker's claim to a commission. In Daily, injuries that plaintiff received in a motor vehicle accident were aggravated by the subsequent malpractice of his treating physicians. The plaintiffs in each case suffered a separate harm from different parties and the Supreme Court refused to allow the ancient common law rule, that a release of one tortfeasor was a release of all, to be used to defeat the plaintiffs' attempts to be made whole. Here, there is no allegation of separate harms inflicted by Rapid and Celotex.
McFadden v. Turner, 159 N.J.Super. 360, 388 A.2d 244 (App.Div.1978) and Moss v. Jones, 93 N.J.Super. 179, 225 A.2d 369 (App.Div.1966) are equally inapplicable. In McFadden, we held that a release of a hospital did not preclude a separate suit against employees of that hospital for their *403 own negligence. In Moss, we permitted an injured plaintiff to maintain separate suits against the driver and owner of the vehicle with which he collided. We do not consider either case to bear upon the present controversy.[2]
In our view it is not unfair to hold this plaintiff to the release executed nearly ten years ago. Within that lawsuit, Celotex was joined as a defendant "as successor to Philip Carey Corporation, Philip Carey Manufacturing Company, Philip Carey Company, Inc., XPRU Corporation, Briggs Manufacturing Company, Panacon Corporation, Smith and Kanzler, Inc., and Insul Coustic Division of the Celotex Corporation." That description is contained not only in the caption but also in the body of the complaint. Thus, the language in the release referring to Celotex's "successors and predecessors in interest" did not arise in a vacuum. In the context of this action, Josephene's private intent in 1990 did not create a material question of fact for purposes of summary judgment analysis. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995).

B
We turn now to Josephene's second assertion, that Rapid, as a matter of law, is not encompassed within her release of Celotex. The core of Josephene's argument revolves around her contention that Celotex cannot be considered a successor to "Old Carey." To support her view, she stresses that "New Carey" obtained the rights and obligations of "Old Carey" through assignment from Glen Alden and urges that an assignee cannot be considered a successor. We are not persuaded by her argument for several reasons.
Initially, we reject her premise that "New Carey's" status as a subsidiary and assignee of Glen Alden precludes it from being considered a successor to "Old Carey."
So far as corporate law is concerned, the words
"successor" and "succession" have no fixed meaning in all cases ...
The word "successors," in a grant to a corporation and its successors, is to be interpreted according to the surrounding circumstances. One corporation may be the successor of another within the meaning of such a provision although there is neither a merger nor a consolidation.
[Fletcher Cyclopedia Corporations § 7203 (Perm Ed.1999).]
The inherent weakness of analyzing the parties' rights and responsibilities in this matter by seizing upon the term "assignee" is demonstrated by Josephene's reference in her reply brief to the fifth edition of Black's Law Dictionary, published in 1979. She notes that the entry for the term "successor in interest" indicates that the term does not apply to transfers or assignments. The seventh edition, however, published in 1999, contains no such limitation. It states merely:
One who follows another in ownership or control of property.  A successor in interest retains the same rights as the original owner, with no change in substance.
[Black's Law Dictionary 1445 (7th ed.1999).]
In this matter, Celotex obtained the rights and liabilities of "Old Carey" with no change in substance and should be considered a successor in interest.
The cases to which Josephene refers on this matter are not persuasive. She cites only one New Jersey case, a 1932 decision of the Court of Errors and Appeals, Schmoele v. Atlantic City R.R. Co., 110 N.J. Eq. 597, 160 A. 524 (E & A 1932). In that case, the Court held that defendant *404 Atlantic City Railroad Company, which had succeeded through purchase and merger to a certain right-of-way issued in 1877 to Philadelphia & Atlantic City Railway Company (Philadelphia), was not obligated under a June 1877 contract, between the grantors of the right-of-way and Philadelphia, to continue to issue the grantors eleven free annual passes for use on the railroad. In Total Waste Management Corp. v. Commercial Union Ins. Co., 857 F.Supp. 140 (D.N.H.1994), the court was called upon to consider whether one corporation, which had purchased the assets of a second, was entitled to liability coverage under a policy of insurance previously purchased by the second. In Enchanted Estates Community Ass'n v. Timberlake Improvement Dist., 832 S.W.2d 800 (Tex.App. 1992), defendant argued that plaintiff's status as an assignee precluded it from being considered a successor in interest; the appellate court disagreed and reversed the trial court's order granting summary judgment to defendant. See, contra, Augusta Court Co-Owners' Ass'n v. Levin, Roth & Kasner, 971 S.W.2d 119 (Tex.App.1998) (association, as assignee of rights to sue on all claims arising out of construction contract, was not successor of named owner of performance bond within meaning of provision affording successors right of action to enforce bond). Toepper v. Brookwood Country Club Road Ass'n, 204 Ill.App.3d 479, 149 Ill.Dec. 585, 561 N.E.2d 1281 (1990) presented a question of the assignability of developers' rights under a development agreement. In PPG Indus., Inc. v. Guardian Indus. Corp., 428 F.Supp. 789 (N.D.Ohio 1977), aff'd in part and rev'd in part 587 F.2d 237 (5th Cir.1979) the parties disputed the effect upon a non-transferrable, non-exclusive patent license of a subsequent merger of the licensee. The Court of Appeals held that the surviving corporation in the merger did not succeed to the license rights earlier granted to the merged corporation. Finally, in International Ass'n of Machinists & Local Lodge # 954 v. Shawnee Industries, Inc., 224 F.Supp. 347 (W.D.Okla.1963), the court held that one corporation purchasing certain assets of a second corporation did not become obligated under a labor agreement previously executed by the selling corporation. We are satisfied that all of these cases are so factually distinguishable that none of them point the way to the decision of this matter.
We are cognizant, moreover, that New Jersey has declined to follow a narrow, categorical approach to analyzing questions of successor liability in the products liability context. "Strict interpretation of the traditional corporate law approach leads to a narrow application of the exceptions to nonliability and places unwarranted emphasis on the form rather than the practical effect of a particular corporate transaction." Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 341-42, 431 A.2d 811 (1981). We should not lightly disregard the Court's admonition that "[t]he form of the corporate transaction ... should not be controlling...." Id. at 343, 431 A.2d 811.
As the comparable doctrine of privity once sheltered the manufacturers of products from consumer claims, the doctrine of corporate-successor liability is an example of a doctrine previously "resting on formalistic and conceptual foundations" that has become a doctrine "with functional and pragmatic roots rather than conceptual roots." Phillip I. Blumberg, The Continuity of the Enterprise Doctrine: Corporate Successorship in United States Law, 10 Fla.J. Int'l L. 365, 366-67 (1996). The new doctrines "focus [ ] on the economic realities of the enterprise rather than on the [involved] entity...." Id. at 367, 431 A.2d 811.

[Lefever v. K.P. Hovnanian Enter., 160 N.J. 307, 312, 734 A.2d 290 (1999).]
We have, in other contexts, declined to permit the technique of assignment to preclude finding a succession in interest. Bussell v. DeWalt Products Corp., 259 *405 N.J.Super. 499, 614 A.2d 622 (App.Div. 1992). Similarly, we decline to rest our decision in this case on the fact that "New Carey" received the rights and liabilities of "Old Carey" by way of assignment. We consider it more appropriate to recognize the substance of what occurred, no matter the label placed upon it at the time.
As part of her argument, Josephene writes within her brief: "Under the terms of the 1972 Merger (between Glen Alden and Rapid-American Corporation), Rapid assumed all the liabilities of Glen Alden, including the liabilities Glen Alden had previously assumed from Old Carey." This statement, however, ignores both the fact that under the terms of that 1972 merger, as set forth in the documents she has supplied to us, Glen Alden was the surviving corporation (albeit with a different name) and the fact that Glen Alden, had some months earlier, transferred those same liabilities to Celotex. We stress in this latter regard that in this case we are only called upon to consider the scope of this release; we are not called upon to consider whether such a transfer could effectively shield Glen Alden from liability. Tretter v. Rapid American Corporation, 514 F.Supp. 1344, 1346 (E.D.Mo. 1981).
The parties have referred us to a recent decision by the Washington Court of Appeals, Niven v. E.J. Bartells Co., 97 Wash. App. 507, 983 P.2d 1193, 1196 (1999) in which that court concluded that "Glen Alden's assignment of Old Carey's liabilities to New Carey does not defeat a claim asserting Old Carey's liabilities against Rapid-American as Glen Alden's successor." We agree, however, with Rapid that the language of the release involved in that case was significantly different from the language employed here.
Here, if Josephene has any claim at all, it has to rest upon the liabilities of "Old Carey." It was just those claims, however, which she released in 1990. We have concluded that she cannot resurrect them years later against this defendant.
One final issue must be addressed. After defendant filed its brief and appendix in this matter, Josephene filed a motion to strike portions of those documents, arguing that Rapid had improperly included material not before the trial court. We reserved decision on the motion. In the course of our analysis of this matter, we have not considered the contested material; we thus deny the motion as moot.
Summary judgment in favor of Rapid is affirmed.
NOTES
[1] Josephene Domanske was married to Jesse Domanski. After his death, she adopted the more traditional spelling of her last name. To avoid possible confusion engendered by this spelling change, we have elected to refer to them by their first names.
[2] We have purposely omitted any discussion of the unpublished opinion to which Josephene has referred, Arrera v. Board of Educ., A-1113-97 (App.Div. November 19, 1998). R. 1:36-3.