GEORGE E. PHILLIPS, appellant,

*v.*

RALPH L. PULLEN, respondent.

1. The general rule is, that for mere inadequacy of consideration, unconnected with fraud, a court of equity will not set aside a contract. In deciding whether such inadequacy is or is not connected with fraud, the court is guided by the following considerations: *First.* Where the known circumstances or relations between the parties are such as to throw suspicion upon the transaction, gross inadequacy of consideration furnishes a strong indication of fraud. *Second.* Fraud will be presumed from inadequacy of consideration, standing alone, if the inadequacy be so gross as to satisfy the court that it could have been brought about only by deceit or imposition, provided the circumstances and relations of the parties either lend themselves to such a presumption, or are without probative force sufficient to neutralize it. *Third.* Mere inadequacy of consideration will not furnish a presumption of fraud where the evidence as to the relations of the parties does not coincide with such presumption; while, if the weight of such evidence is against it, mere inadequacy does not rise to the height of an efficient presumption of fraud.

2. Where the parties to a suit at law have tried an issue of fact over which the court had jurisdiction, neither party, after judgment, can obtain, in equity,

Phillips v. Pullen.

any relief against the other, predicated in whole or in part upon an assumption of any such fact, contrary to its determination by the court of law; as to the parties such a determination is *res judicata.*

On an appeal from a decree of the chancellor, whose opinion is reported in *Phillips* v. *Pullen, 18 Stew. Eq. 5.*

*Hon. John P. Stockton, Attorney-General,* and *Mr. William Y. Johnson,* for the appellant.

*Mr. George O. Vanderbilt, Mr. Chauncey H. Beasley* and *Mr. Woodbury D. Holt,* for the respondent.

The opinion of the court was delivered by ·

Garrison, J.

An action was brought by Pullen against Phillips. The declaration contained counts for criminal conversation with. Pullen's wife, for enticing her from home and for harboring her. Issue was joined and the cause was noticed for the January Term of the Mercer circuit of 1886. When the cause was about to be moved, an agreement was made, which was subsequently reduced to writing and signed by the attorneys of the respective parties. It was in these words:

"New Jersey Supreme Court,
"Mercer County Circuit.

"Ralph L. Pullen
             *v.*            } In Case.
"George E. Phillips.

"The said cause having been settled between the parties upon the terms that the said defendant is to pay the plaintiff or his attorney, the sum of seven thousand and five hundred dollars in full satisfaction of all damages under said cause; It is therefore agreed by the respective counsel of the said parties, that the payment of the said sum shall be made within two weeks from the date hereof, and upon such payment the said plaintiff shall execute a release to the defendant in full for the damages claimed in the said action.

"Dated Trenton, N. J., Jan'y 20th, 1886.

"G. D. W. Vroom,
             "*Att'y for Deft.*
"Geo. O. Vanderbilt,
             "*Att'y of Plaintiff.*"

This settlement was announced to the court, and the trial went off. The defendant subsequently declining to pay the sum agreed, suit was brought against him by Pullen on the agreement for the recovery of the amount therein specified as liquidated damages. Phillips then exhibited in the court of chancery a bill of complaint, for the purpose of enjoining said suit at law and of having the said agreement upon which it was based annulled as fraudulent and unconscionable. This bill contained a series of allegations tending to show that complainant was innocent of the charge preferred against him by Pullen; that Pullen's conduct was such as to show that his charge was baseless, to his own knowledge; that at the time the settlement was made complainant was harassed by his opponent's preparation for trial and surprised by the absence of an associate counsel, and that, in giving authority to his attorney to enter into the compromise, he firmly believed that he was buying his peace, not only from the suit then pending, but also from ever after having his name involved in any other proceeding touching the said scandal, and that the sum for which his attorney settled was excessive and the consideration therefor grossly inadequate.

The order to show cause why an injunction should not issue, pursuant to the prayer of this bill, was dismissed. No reasons are assigned in the order, but the complainant, in his supplemental bill which is now before us, avers that the chancellor made said order upon the ground that the allegations of the bill could be proved, as a defence, upon the trial of the suit at law. At the trial which followed, Phillips offered his proofs, which were received in evidence, although, at the close of the case, the trial court overruled the defence, as being inadequate to support a verdict for the defendant. A writ of error was thereupon taken, and the legal propriety of this disposition of the defendant's case was affirmed by this court. *Phillips* v. *Pullen, 21 Vr. 439.* A supplemental bill was thereupon filed by Phillips, rehearsing the facts hereinabove stated, and claiming that, inasmuch as the chancellor, before whom the original bill had come, was in error in supposing that orator's defense could be availed of in a court of law, the court of chancery should now pass upon

Phillips *v.* Pullen.

the case *de novo* and grant the prayer of complainant's supplemental bill, viz., that Pullen be perpetually enjoined from executing his judgment obtained at law. The present appeal is taken from the order of the chancellor (McGill) dismissing the order to show cause allowed upon the filing of this supplemental bill.

By his supplemental bill, complainant secured a rehearing in the court of chancery. Between these two hearings in chancery the trial of the action at law intervened. The present status, therefore, is, that the court of chancery has, upon the same state of facts, twice declined to interfere with the action at law between these parties: before the trial, because the facts could be presented in the suit at law then pending; after the trial, because they had been disposed of in the suit at law then concluded. The only allegations found in the supplemental bill that are not contained in the original bill, are the dismissal of the first order to show cause, the trial of the action at law, its results, and their affirmance by the court of errors and appeals. The claim of the supplemental bill, that the chancellor (Runyon) was in error in determining that complainant's defence could be availed of in a court of law, is of no substantial significance. The language of the chancellor could have meant nothing more than that the matters before him were proper subjects for investigation in the pending suit at law, not that they would there surely exonerate the complainant. Upon the trial of the legal action, Phillips offered in his defence such proofs as he desired, and they were received by the court and duly weighed. The fact that they were found wanting in legal adequacy cannot affect favorably his standing as a suitor in equity. Equity, in relegating him to the courts of law, did not become, in any sense, an insurer of his success.

The real question in the case is, has the complainant presented to the court of chancery such facts, over and above those disposed of in the action at law, as should move a court of equity to interpose in his behalf?

A reference to the circuit record, which is made a part of this case, shows that, in the suit upon the written agreement, the fol-

lowing issues were necessarily passed upon by the trial court, viz.: that Phillips's attorney had authority from him to compromise the suit; that under such authority he was empowered to sign and did sign the agreement in suit; that the agreement did not lack consideration, and that neither the amount agreed upon nor the attitude of Pullen toward the suit or its compromise were proofs of fraud.

It is part of our fundamental law that facts actually decided by an issue in any suit cannot again be litigated between the same parties. Counsel for the appellant, however, challenges, at the threshold, the applicability of the doctrine of *res judicata* to this case. In the first place, he says that he should not be concluded by the finding of the court of law, that Phillips's attorney had authority to sign the agreement in suit. This contention rests upon the ground, that Phillips's affidavit to his bill in chancery states that his sole motive in authorizing his attorney to enter into an agreement to pay a stipulated sum, was his desire to prevent all further publicity to the scandal; whereas the agreement signed by his attorney is limited in terms to the action in which it is entitled, and will be satisfied by Pullen's execution of a release therein, leaving him free to set up the illicit relations between Phillips and Mrs. Pullen in a suit for divorce, or even in criminal proceedings.

In so far as this contention rests upon fraud in the procurement of the written contract, it is no longer an open question. That was one of the issues directly involved in the suit at law. If true, there could have been no recovery. The thing to be proved, and the *quantum* of proof, do not differ in the two jurisdictions. It was opened to the jury as part of the defendant's case, and at least one witness, Mr. Edward T. Green, was examined by the defendant fully and solely upon the point that the contemplated agreement was expected to close all of the avenues by which the scandal of Phillips's relations with Pullen's wife might again become public. That Phillips himself did not go upon the witness-stand cannot have the effect of weakening the legal force of the decision against him upon the points involved. I see no way to avoid the conclusion that it is *res judi-*

Phillips *v.* Pullen.

*cata* that the agreement was not the product of fraud. It was suggested, upon the argument, that the complainant might be relieved in equity, if, through mistake, the agreement, as signed, failed to express the intention of the parties. The power of equity to reform contracts for mistakes of the parties or their agents, is one of the most common exercises of its jurisdiction; but it has always been held to be of the essence of the rule in such cases, that relief be granted only when the mistake in question is mutual—a condition of things which the clearness of the written language employed in this case, and the determined attitude of Pullen's attorneys, forbid us to assume.

Upon considerations, however, directly affecting the merits of complainant's claim in this behalf, it must fall. His objections to the agreement, in the respect now under consideration, are limited, so far as mention goes, to the fact that, as drawn, it does not prevent Pullen from setting up, in divorce proceedings, the alleged criminality between his wife and Phillips, which Phillips says was to have been included in the settlement. Without being diverted into a discussion of the questions of public policy involved in this proposition, it will be sufficient, for present purposes, to say, that whatever a court of equity might do with such a compact, if actually entered into, it will not disturb a contract, in all other respects lawful, in order to graft into it a provision of this nature, especially in view of the fact that such is not pretended to have been the bargain of the parties, but only to have been the expectation of one of them. What has been just said applies with even greater force to the suppression of criminal proceedings, and of the scandal and publicity incident thereto.

The main stress of appellant's contention, however, is, that he is entitled to relief against the judgment at law, because of the inadequacy of the consideration of the contract sued on—a subject which he insists cannot be controlled by the doctrine of *res judicata*. His argument upon this point rests upon the essential difference between law and equity in dealing with inadequacy of consideration. In each fraud is the ground of relief; in law it must be proved like any other fact; whereas, equity will, in cer-

tain cases, rest its right to relieve upon the presumption of fraud raised by gross inadequacy of consideration alone. Hence, the argument proceeds, the finding by a court of law that fraud, as an ingredient of inadequacy, has not been sufficiently proved, is not such a decision as will conclude a court of equity, which may find an ample presumption of fraud inherent in the mere grossness of the inadequacy. The distinction here made is undoubtedly a valid one, but counsel has not directed us, nor have I been able to turn, to any instance of its application to the practical workings of the doctrine of *res judicata*. The matter was, however, urged with an earnestness which has led to an examination of the purely equitable rules invoked by counsel.

The general rule undoubtedly is, that, for mere inadequacy of consideration, unconnected with fraud, a court of equity will not set aside a contract. *Simmons* v. *Vandegrift, Sax. 55; Wintermute* v. *Snyder, 2 Gr. Ch. 489; Weber* v. *Weitling, 3 C. E. Gr. 441; Graffam* v. *Burgess, 117 U. S. 180,* and cases there cited by Mr. Justice Bradley.

In deciding whether such inadequacy is or is not connected with fraud, the court is guided by the following considerations :

*First.* Where the known circumstances or relations between the parties are such as to throw suspicion upon the transaction, gross inadequacy of consideration furnishes a strong indication of fraud.

*Second.* Fraud will be presumed from inadequacy of consideration, standing alone, if the inadequacy be so gross as to satisfy the court that it could have been brought about only by deceit or imposition, provided the circumstances and relations of the parties either lend themselves to such a presumption, or are without probative force sufficient to neutralize it.

*Third.* Mere inadequacy of consideration will not furnish a presumption of fraud where the evidence as to the relations of the parties does not comport with such presumption ; while, if the weight of such evidence is against it, mere inadequacy does not rise to the height of an efficient presumption of fraud.

Bearing these principles in mind, and ignoring, for the moment, the adjudications as to legal fraud, a study of the testi-

mony in this case satisfies me that the theory of equitable fraud receives no substantial support from the other evidence in the case, while, on the contrary, the relations between the parties and the circumstances surrounding the transaction, as shown by the evidence, are such as to deprive mere inadequacy of consideration of that presumptive force which obtains only when it is in complete harmony with the other proofs.

The occasion for this settlement arose naturally, and without procurement or device. Its negotiation gave neither chance for imposition nor opportunity for fraud. If there was inequality of knowledge, it was not against Phillips. He was in a position where he must have known at least as much of his side of the case as the other party could possibly know of theirs. He was aided by counsel of such experience and acumen as deny to client the benefit of the very ignorance he claims. There is nothing in the relations of the parties, or in the circumstances of the settlement, to give color to the theory of fraudulent imposition or of unconscionable oppression. In such a state of the proofs, a court of equity is, as we have seen, not at liberty to ascribe to mere inadequacy of consideration the force of a presumption of fraud. A conclusion which rests, not upon the doctrine of *res judicata*, but upon those distinctively equitable principles which control this court in dealing with cases involving inadequacy of consideration.

Thus far, following the premises necessary to appellant's argument, the element of inadequacy of consideration has been treated as if it were an established fact in the case. Viewed, however, as a fact in issue, I cannot see how, under the circumstances, the consideration in this case can be said to be certainly grossly inadequate. The matter compromised was one peculiarly unsusceptible of measurement by prescribed rules. Apart from all sentimental considerations, the damages sued for were heavy, and the prospect of an adverse verdict must, to say the least, have been regarded as among the possibilities. The trial could not have proceeded without giving immediate publication to those scandals which complainant admits it was his chief concern to suppress. Thus situated, he buys his release at about one-third

of the damages demanded. The trial is stopped, and all of the advantages, both pecuniary and otherwise, which can legally attach to his contract, inure to him. Such a composition cannot, I think, be said to be so grossly unconscionable that it admits of no rational explanation but fraud. So that, whether we regard the question of fraud, as determined by the suit at law between the parties, or as one to be here disposed of, our conclusion is, that the complainant has not presented, either in his original bill. or in his supplemental bill, any state of facts which a court of equity can so reconcile with the proofs as to decree the relief prayed for. The order appealed from is therefore affirmed.

*Order unanimously affirmed.*