**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3743-22

YOGENDRANATH PAPAGARI
and CHANDRA SHEKHAR
MAMIDI,

     Plaintiffs-Appellants,

v.

VASU TALLURI, SRINIVAS
NARNE, VASU BABU DIVI,
SARANSH, INC., NARTAL
SYSTEMS, INC., I28
TECHNOLOGIES CORPORATION,
TRISYNC TECHNOLOGIES, INC.,
BLUE PLANET, INC., and GLOBAL
DATA MART, INC.,

     Defendants-Respondents,

and

AKP TECHNOLOGIES INDIA
PRIVATE LIMTED, DUMPA
NARASIMHA REDDY,
KATAMAREDDY GEETHANJALI,
CHIMIRI SATEESH, KONURU
DATTATREYA KUMAR, and
RAGHAVA KATAMREDDY,

Defendants.

_____

Argued September 17, 2024 – Decided November 22, 2024

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No C-000148-17.

Susheela Verma argued the cause for appellant.

Thomas Kamvosoulis argued the cause for respondents (Brach Eichler, LLC, attorneys; Thomas Kamvosoulis, of counsel and on the brief; John Simeone, on the brief).

PER CURIAM

Plaintiffs Yogendranath Papagari and Chandra Shekhar Mamidi appeal from the June 23, 2023 trial court's order, granting defendants Vasu Talluri, Srinivas Narne, and Global Data Mart, Inc.'s (GDM) motion to enforce a settlement agreement and denying plaintiffs' motion for additional compensation, damages, and counsel fees. We affirm.

I.

Plaintiffs owned GDM, a New Jersey entity, and its affiliated entity, Global DataMart Systems India Pvt Ltd. (GDM India), located in India. On January 12, 2017, Talluri and plaintiffs entered into a stock purchase agreement for GDM and selected assets of GDM India. The stock purchase agreement

2

contained a transition period and a six-month installment plan for defendants to purchase the stocks and assets. Narne executed an unconditional guaranty and a promissory note in favor of Papagari. Before remitting the final payment, defendants raised several issues related to representations made by plaintiffs in the stock purchase agreement. The parties disputed the assumption of liability for plaintiffs' existing $693,140.45 loan. Plaintiffs also failed to deliver and relinquish control over multiple GDM assets. Accordingly, defendants objected to and did not make the final payment required by the stock purchase agreement.

Thereafter, plaintiffs filed a complaint to regain control over GDM assets that were previously transferred to defendants. Plaintiffs filed an answer and counterclaim, asserting breach of contract and related claims. Plaintiff then amended their complaint, asserting additional claims of conversion, misappropriation, unjust enrichment, and related causes of action against defendants.

The matter proceeded to trial. On March 29, 2023, the second day of the trial, the parties negotiated a settlement that was memorialized in a handwritten agreement. The settlement was recited on the record; however, the settlement

amount was not disclosed.[1]  When voir dired, the parties testified they understood and assented to those settlement terms.  Relevant to this appeal, the agreement required $625,000.00 be deposited in the Bendit Weinstock attorney trust account no later than Wednesday, April 5, 2023, to be held in escrow while the parties drafted and signed a confidential settlement and release agreement.[2] Bendit Weinstock was required to provide proof of receipt of the settlement funds to plaintiffs' counsel.  In the event the settlement funds were not deposited in the attorney trust account by April 5 and five days passed without curing, plaintiffs would be entitled to an additional $100,000.00 and the entry of judgment in the total amount of $725,000.00.  The agreement also included a waiver of all monetary and other claims.  Lastly, the final settlement and release agreement would include a "confidentiality provision" and "a provision that if

---

[1]  The settlement hearing transcript shows the handwritten agreement was submitted as a joint exhibit to the trial court.  On appeal, plaintiffs submitted a redacted handwritten settlement agreement and an unredacted settlement agreement in a confidential appendix.  A signed final confidential settlement agreement and release is not part of the record on appeal.  Plaintiffs did not move to seal the handwritten settlement agreement nor offer a compelling reason for the agreement to be cloaked in confidentiality in their merits brief.

[2]  Defendants Talluri, Narne, GDM, and Blue Planet, Inc. were represented by Bendit Weinstock during the litigation before the trial court.

A-3743-22

either party breached the agreement and obtains an award of damages, the prevailing party shall be entitled to counsel fees and costs."

Pursuant to the settlement terms, $625,000.00 was deposited into the Bendit Weinstock trust account on April 5, 2023. That same day, plaintiffs' counsel received confirmation of the deposit. Between April 5 and May 15, several iterations of a draft settlement agreement were exchanged between the parties; however, finalization of the agreement was stalled concerning an outstanding line of credit secured by plaintiffs. Unable to finalize the settlement agreement, plaintiffs moved to enforce the handwritten agreement, seeking $100,000.00 plus interest, counsel fees, and costs. Defendants opposed plaintiffs' motion and cross-moved to enforce the handwritten agreement in its entirety.

Following oral argument on June 23, 2023, the trial court denied plaintiffs' motion and granted defendants' cross-motion in its entirety, finding the handwritten agreement did not expressly "mandate" payment of the settlement funds by a date certain. The trial court further found defendants did not act in bad faith by "wanting to get clarity in terms of the settlement" prior to the release of the settlement funds from the trust account. This appeal followed.

II.

Plaintiffs present two arguments on appeal. First, the trial court erred in denying their motion because defendants breached the settlement agreement. Second, the trial court erred in finding defendants did not act in bad faith. We disagree with both these arguments because they are not supported by the record.

"Interpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). A court's task is not to "torture the language of [a contract] to create ambiguity." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (alteration in original) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). Rather, courts look to the plain terms of the contract and declare the meaning of what is already written, not what, in hindsight, may have been written. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001) (explaining a court's task is not to rewrite a contract for the parties better than or different from the one they wrote for themselves).

We are guided by the well-established legal principles governing settlements. There is a strong public policy in favor of enforcing settlement

6

agreements, which is "based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)).

Generally, settlements are enforced "absent compelling circumstances." Ibid. (internal quotation marks omitted) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "Consequently, courts 'strain to give effect to the terms of a settlement wherever possible.'" Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Dep't of Pub. Advoc., Div. of Rate Couns. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)).

Essentially, a settlement agreement is a contract. Nolan, 120 N.J. at 472 (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella, 190 N.J. Super. at 124-25 (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). Therefore, a settlement agreement is

governed by principles of contract law. <u>Brundage</u>, 195 N.J. at 600-01 (citing <u>Thompson v. City of Atl. City</u>, 190 N.J. 359, 379 (2007)).

Essential terms are those that go to the "heart of the alleged agreement." <u>Satellite Ent Ctr., Inc. v. Keaton</u>, 347 N.J. Super. 268, 277 (App. Div. 2002). Alternatively, if the parties do not agree to one or more essential terms, their contract is ordinarily unenforceable. <u>See</u> <u>ibid.</u> Where parties have agreed to the essential terms of a settlement, "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement." <u>Dep't of Pub. Advoc.</u>, 206 N.J. Super at 530.

Here, the settlement language is clear, the $625,000.00 settlement funds were to be deposited in Bendit Weinstock's attorney trust account and notice provided to plaintiffs' counsel by April 5. Plaintiffs were only entitled to the additional $100,000.00 if defendants did not timely deposit the funds and failed to cure the breach within five days. <u>See</u> <u>Hardy ex rel. Dowdell v. Abdul-Matin</u>, 198 N.J. 95, 103 (2009) (recognizing "a basic principle of contract interpretation is to read the document as a whole in a fair and common-sense manner"). Despite plaintiffs' contentions, the record shows defendants timely complied with the settlement agreement.

We reject plaintiff's contention that "[t]he quick payment to [p]laintiffs, and not to the [d]efendants' attorneys, was the material term understood by everyone" and "the intent [was] well demonstrated by the settlement agreement." Based on the clear language of the settlement agreement, there is no confusion regarding when the settlement funds were to be deposited and held until a final agreement was executed. The agreement did not contain any language specifying the release of the settlement funds to plaintiffs. Moreover, the parties are sophisticated in business dealings and were represented by experienced counsel during settlement negotiations; and as such, plaintiffs had the opportunity to negotiate and reduce to writing a definitive date for the release of the settlement funds to plaintiff. This was not done.

Nor are we persuaded defendants acted in bad faith given the express and unambiguous language of the handwritten settlement agreement, and conclude it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                    A-3743-22