**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0562-24

WALTER CABEZAS as
administrator of THE ESTATE
OF ALDEMAR CABEZAS,

     Plaintiff-Respondent,

v.

PENSKE TRUCK LEASING CO.,
LP, and NEHAL A. SELIM,

     Defendants-Appellants.

_____

Submitted October 8, 2025 – Decided October 28, 2025

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2708-22.

Biancamano & Di Stefano, PC, attorneys for appellants (Ryan M. Sedlak, on the briefs).

Mazie Slater Katz & Freeman, LLC, attorneys for respondent (Adam M. Epstein, of counsel and on the brief; Trevor D. Dickson, on the brief).

Bendit Weinstock, PA, attorneys for amicus curiae New Jersey Association for Justice (K. Raja Bhattacharya, on the brief).

PER CURIAM

Penske Truck Leasing Co., LP and Nehal A. Selim (defendants) appeal final orders enforcing a settlement agreement and denying reconsideration in a wrongful-death action brought by Walter Cabezas as administrator of the Estate of Aldemar Cabezas (plaintiff). The settlement agreement stated defendants agreed to pay $500,000 and, in exchange, plaintiff would release all claims and be solely responsible for satisfying any and all outstanding medical bills and liens. Despite this language, defendants paid the Medicare lien directly and then remitted the remainder of the settlement amount to plaintiff. After plaintiff moved to enforce the settlement agreement, the trial court granted the motion and ordered defendants to pay the full $500,000.

Defendants argue the trial court erred by ordering payment of the full $500,000 settlement because plaintiff suffered no damages and was provided a "windfall" as a result. We conclude the trial court correctly enforced the plain and unambiguous terms of the settlement agreement, and any speculative windfall resulted solely from defendants' breach of the settlement agreement.

2

A-0562-24

Plaintiff filed a wrongful-death action following the death of Aldemar Cabezas, who was struck by a vehicle owned by Penske Truck Leasing Co., L.P. on September 7, 2021.

On December 5, 2022, Centers for Medicare & Medicaid Services (CMS) issued a conditional payment letter to plaintiff, stating Medicare had identified $62,100.82 in conditional payments related to the case. On May 9, 2024, plaintiff notified defendants that any potential settlement was not contingent on the Medicare issue, asserted plaintiff alone would satisfy any Medicare liens, and instructed defendants not to wait on "any Net Refund documents from Medicare" before payment of the settlement. On May 20, 2024, after discovery had concluded, the parties entered into a settlement agreement in which defendants agreed to pay $500,000 in full satisfaction of all claims. The release explicitly stated plaintiff would be responsible for satisfying any and all outstanding medical bills and liens:

> In accordance with the Medicare Secondary Payer Act, the interests of CMS (Centers for Medicare Services) have been taken into account and in accordance with the SCHIP law, no reporting is necessary with regard to this settlement. <u>The plaintiff agrees to fully satisfy, indemnify, and hold defendant harmless from any and all penalties, liens, conditional payments, fines, demands, and actions in law or equity, or other</u>

A-0562-24

> payments that <u>may be required</u> if any of the plaintiffs'
> representations as to their entitlement (or lack thereof)
> to Medicare or Social Security benefits is in any way
> misrepresented.
>
> [(emphasis added).]

Later the same day, defendants' third-party administrator requested plaintiff submit documentation regarding the outstanding Medicare lien. Plaintiff refused to provide the Medicare information, again emphasizing exclusive responsibility for the payment of any Medicare lien rested with plaintiff under the terms of the settlement and release, which plaintiff described as "non-negotiable."

On May 22, 2024, plaintiff sent the executed release to defendants. On June 3, 2024, CMS issued a final demand letter setting the finalized Medicare lien at $39,365.09. The letter also described plaintiff's rights to request waiver or appeal within 120 days. On June 12, 2024, plaintiff supplied defendants with the documentation showing the final Medicare lien amount of $39,365.09, again asserted plaintiff's sole responsibility for the lien, and pressed for immediate payment of the $500,000 settlement. Despite this, on July 8, 2024, defendants notified plaintiff it had issued a check for $460,634.91 to plaintiff (the $500,000 settlement minus the Medicare lien), and confirmed its third-party administrator

A-0562-24

had paid the Medicare lien directly. Plaintiff objected and immediately demanded the full $500,000.

On July 12, 2024, plaintiff moved to enforce the settlement agreement, seeking payment of the full $500,000 plus interest and attorneys' fees. Defendants opposed enforcement, arguing plaintiff had incurred no damages. The trial court heard oral argument and explained:

> THE COURT: Well, the agreement – the settlement agreement you entered into called for a $500,000 settlement, and [plaintiff] would resolve the Medicare lien. . . . [B]y you paying the Medicare lien, it removes from them the ability to resolve the medical -- Medicare claim.
>
> [DEFENSE COUNSEL]: That's – that's true, Your Honor. I will say that this is a situation where, again, this is the first I'm hearing that they intended to dispute the amount. But there's no –
>
> THE COURT: I hear it in every litigation before me.
>
> [DEFENSE COUNSEL]: This is a situation where there's no harm, no foul, Your Honor.
>
> THE COURT: Well, I – how is there no harm? . . . [D]o you know for a fact that Medicare would not have compromised the lien?
>
> [DEFENSE COUNSEL]: I do not know that for a fact.
>
> THE COURT: Then there's potential harm, isn't there?

A-0562-24

[DEFENSE COUNSEL]: There's potential harm but nothing cited concrete.

THE COURT: Because you removed the chance.

The trial court enforced the settlement agreement as written and awarded plaintiff counsel fees and costs incurred with bringing the motion. The trial court reasoned:

The [c]ourt is going to grant the motion to enforce the settlement. The settlement of a legal claim between parties is a contract, like any other contract, which may be freely entered into and which a court, absent demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts.

The parties agreed to a settlement agreement in which the defendants agreed to pay the plaintiff [$500,000] which would resolve the matter. The settlement agreement said the plaintiff would hold the defendant harmless from any Medicare liens or Medicare penalties. The settlement agreement was not contingent on Medicare issues being resolved. By paying the Medicare lien, defendants violated the terms of the settlement agreement which the plaintiff . . . was required to satisfy all Medicare liens.

Defendants also eliminated the opportunity for plaintiff to negotiate with Medicare to possibly have the lien removed. Defendants, therefore, are ordered to pay the entire $500,000.

Defendants moved for reconsideration, arguing the trial court's decision provided plaintiff with a "double recovery" or a "windfall," and plaintiff had

6

suffered no damages because its inability to negotiate the lien was speculative. The court denied reconsideration, noting: "This was not a damages application. I did not find damages. I said they were entitled to the contract that they agreed to, $500,000. If your client paid something outside of the contract, that's on your client" and reaffirmed: "I did [not] award them . . . extra money. I gave them what they bargained for. Your client voluntarily paid something else." The trial court found defendants' Medicare payment fell outside the agreement, did not excuse their obligation to plaintiff, and was "gratuitous." This appeal followed.

## II.

Our review of a motion to enforce settlement is de novo and considers whether the "available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party." Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997). However, we review a trial court's denial of a motion for reconsideration, Rule 4:49-2, pursuant to the abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

A-0562-24

On appeal, defendants concede their "technical" breach of the settlement agreement by paying the Medicare lien, but emphasize plaintiff presented no evidence showing a likelihood the lien could have been further reduced or any actual loss stemming from their inability to negotiate, rendering any damages speculative. We are not persuaded.

"Generally, a settlement agreement is governed by principles of contract law." Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008) (quoting Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Id. at 601 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)). "'[C]ourts should discern and implement the intentions of the parties[,]' and not 'rewrite or revise an agreement when the intent of the parties is clear.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (alteration in original) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement . . . ." Ibid. (quoting Quinn, 225 N.J. at 45). "We cannot 'rewrite a [settlement agreement] for the parties better than or different

from the one they wrote for themselves.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

It is undisputed the parties entered into a valid settlement agreement that defendants breached. Indeed, the language of the agreement is explicit in assigning the responsibility for satisfying any Medicare liens to plaintiff. Notwithstanding, defendants' primary contention is one of damages. Specifically, defendants assert plaintiff presented no evidence showing a likelihood the lien could have been further reduced or any actual loss stemming from their inability to negotiate, rendering damages speculative. This argument is belied by two significant facts. First, as both the trial court and defense counsel acknowledged, it is standard practice for Medicare to negotiate liens. Second, and perhaps more importantly, the trial court did not need to find damages. Instead, it found defendants' payment to Medicare entirely outside of the settlement agreement. The trial court was asked to enforce the settlement agreement, not opine on a breach of contract action. It was not required to find damages; it was required to enforce the plain language of the settlement agreement as written. See Capparelli, 459 N.J. Super. at 604; GMAC Mortg., LLC, 230 N.J. at 186. The plain language of the settlement agreement is clear

and unambiguous:  defendants were to pay plaintiff $500,000 in exchange for plaintiff releasing all claims related to the incident, and plaintiff was solely responsible for the Medicare lien.  Defendants did not comply with either provision, and the trial court correctly enforced the settlement agreement as written when it ordered defendants to pay the entire $500,000.  For the trial court to hold otherwise would allow defendants to unilaterally alter agreed-upon terms after the fact.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

10

A-0562-24