**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2923-24

RAVON HINTON,

     Plaintiff-Appellant,

v.

KEYLA J. RIVAS ACOSTA and
KENIA B. ACOSTA FELIZ,

     Defendant-Respondents,

and

UBER TECHNOLOGIES, INC.
and RAISER, LLC,

     Defendants.

_____

         Argued April 13, 2026 – Decided April 22, 2026

         Before Judges Walcott-Henderson and Bergman.

         On appeal from the Superior Court of New Jersey, Law
         Division, Passaic County, Docket No. L-1431-24.

         Eric G. Kahn argued the cause for appellant (Amy L.
         Peterson, PC, and Javerbaum, Wurgaft, Hicks, Kahn,

Wikstrom & Sinins, attorneys; Amy L. Peterson, on the briefs).

Joseph J. Michalowski argued the cause for respondents Keyla J. Rivas Acosta and Kenia B. Acosta Feliz (Goetz Schenker Blee & Wiederhorn, LLP, attorneys; Joseph J. Michalowski, of counsel and on the brief).

PER CURIAM

Plaintiff Ravon Hinton appeals from a trial court order dismissing his personal injury complaint against defendants Keyla J. Rivas Acosta[1] (driver operator) and Kenia B. Acosta Feliz (vehicle owner), finding Rivas Acosta and plaintiff had entered into an oral financial settlement shortly after the accident. After our de novo review of the record and application of the relevant legal principles, we affirm for the thoughtful reasons expressed by Judge Thomas J. LaConte in his oral decision.

I.

The relevant facts are as follows. On the evening of September 17, 2023, plaintiff asserts he was struck by a vehicle operated by defendant while he was walking across an intersection in Paterson. Defendant had a passenger in her vehicle who witnessed the accident and its aftermath. The accident occurred

---

[1] We refer to Keyla J. Rivas Acosta as defendant in this opinion as defendant Kenia B. Acosta Feliz was included as a defendant in the complaint as the owner of the vehicle driven by Rivas Acosta.

A-2923-24

during a dark and rainy night, with plaintiff wearing black clothing as reflected in the police crash report and confirmed by multiple witnesses.

Immediately after the accident and before law enforcement arrived, defendant asserts that plaintiff expressed that there was no need to contact the police or file an insurance claim, and offered not to report the accident or pursue legal action against her in exchange for $500 in cash.

Despite plaintiff's offer, defendant contacted the Paterson Police Department. Officer Cesar Nunez was assigned the call and arrived at the accident scene shortly thereafter along with a second officer. Thereafter, the parties' interaction was captured by Officer Nunez's body worn camera ("BWC").[2]

In the BWC footage, plaintiff repeatedly refused medical attention and repeatedly expressed to Officer Nunez his desire to accept $500 cash from defendant. Defendant eventually agreed to speak with plaintiff regarding his demand for $500 in cash in exchange for avoiding any further legal complications or claims.

The relevant portion of the conversation captured on the body worn camera footage follows:

---

[2] We have reviewed the body worn camera footage in the record.

DEFENDANT: Let me ask you a question, do you make an agreement that after I give you the money, it's all over with?

PLAINTIFF: It's over with! It's over with. Look, I'm on camera, it's over. I just want my [$]500 and just go right now just go.

DEFENDANT: Why won't you just take the [$]400? Please, I'm begging you to just take the [$]400.

PLAINTIFF: Aight, come on let's do it let's do it let's come on.

OFFICER NUNEZ: So, is it [$]400?

PLAINTIFF: Yea, yea it's over come on.[3]

With an agreement arranged, defendant informed plaintiff and Officer Nunez that she would need to stop at an ATM to secure the funds to pay plaintiff as she did not have the money on her immediate person. Plaintiff agreed to accompany defendant to various ATMs for her to withdraw the cash she intended to give him, however, given the lateness of the hour, several ATMs in the city were closed and inaccessible. Ultimately, defendant located an open ATM and, while on Officer Nunez' body camera, withdrew the agreed-upon cash and handed it to plaintiff.

---

[3] The statements were captured from the BWC footage and provided to the trial court as an exhibit to defendant's motion.

A-2923-24

Shortly thereafter, plaintiff filed a civil complaint on May 13, 2024, alleging that he sustained serious injuries—traumatic brain, cervical and lumbosacral spine, and knee injuries—as a direct result of the accident. Defendants collectively filed an answer on July 17, 2024, denying liability and asserting numerous affirmative defenses; including accord and satisfaction, release, comparative negligence and specifically raised the oral settlement agreement between the parties as a complete defense.

Following the commencement of discovery but before depositions of the parties were taken, defendant moved to enforce the oral settlement agreement made at the scene of the accident, which was supported by certifications from the officers and witnesses, interrogatory responses, the police accident report, the deposition transcript of Officer Nunez and Officer Nunez's body camera video.

Plaintiff opposed the motion, arguing that the evidence did not satisfy the proofs required for the formation of a valid contract due to lack of acceptance, meeting of the minds and diminished capacity of plaintiff. Plaintiff also challenged the clarity of the BWC footage and insisted that there were conversations that were not captured by the camera. Lastly, plaintiff argued that the alleged agreement did not satisfy the requirements of N.J.S.A. 17:29B-15,

A-2923-24

which prevents the enforcement of the settlement agreements unless certain conditions are met.

Following oral argument, Judge LaConte granted defendants' motion. Relying heavily on the BWC footage and the deposition of Officer Nunez, the judge found plaintiff was lucid, aware of the implications of his conduct and that he controlled the negotiations throughout the interaction. The judge further found that there was clear evidence of an offer, acceptance and consideration and no evidence of fraud, coercion, or duress. Consequently, the judge enforced the settlement between the parties and dismissed plaintiff's complaint with prejudice.

On appeal, plaintiff contends the trial court committed error by enforcing the alleged oral agreement, asserting that the alleged agreement is not valid because there was no "meeting of the minds" and a hearing should have been held concerning "its viability as a contract," and that plaintiff's waiver of his personal injury claims were unenforceable because the settlement agreement occurred within 30 days of the accident, which is prohibited under N.J.S.A. 17:29B-15.

A-2923-24

## II.

Our review of a determination to enforce settlement is de novo and considers whether the "available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party." Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997). The party seeking to enforce the settlement has the burden of proving a valid settlement was reached. Id. at 475.

It is well-settled that "public policy wisely encourages settlements . . . ." McDermott v. AmClyde, 511 U.S. 202, 215 (1994); see also Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961) ("The settlement of litigation ranks high in our public policy."). Settlement agreements are encouraged as a matter of public policy "because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by . . . courts." Ehrheart v. Verizon Wireless, 609 F.3d 590, 595 (3d Cir. 2010).

"Generally, a settlement agreement is governed by principles of contract law." Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008) (quoting Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into

and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Id. at 601 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)). "'[C]ourts should discern and implement the intentions of the parties[,]' and not 'rewrite or revise an agreement when the intent of the parties is clear.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (alteration in original) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement . . . ." Ibid. (quoting Quinn, 225 N.J. at 45). "We cannot 'rewrite a [settlement agreement] for the parties better than or different from the one they wrote for themselves.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

A valid settlement agreement requires an offer and acceptance by the parties, "and the terms of the agreement must 'be sufficiently definite [so] "that the performance to be rendered by each party can be ascertained with reasonable certainty."'" GMAC Mortg., 230 N.J. at 185 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). There must be an "unqualified acceptance to conclude the manifestation of assent." Weichert, 128 N.J. at 435-36 (quoting

Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953)). "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Id. at 435. "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." Ibid. Once parties form an enforceable contract, the agreement remains binding even if a final "writing does not materialize because a party later reneges." Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995) (quoting Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993)).

Plaintiff argues he never accepted defendant's offer and that he did not have the requisite capacity to enter into an agreement due to the surrounding circumstances. Plaintiff offers no citations to the record in support of his position on appeal; rather, at oral argument before the trial court, plaintiff argued that the evidence—namely the BWC footage—was ambiguous. We are unpersuaded by these arguments, which are belied by the BWC footage.

Officer Nunez's BWC footage clearly confirms the trial court's findings that the parties voluntarily entered into a settlement agreement. Here, there is no evidence proffered by plaintiff that creates any genuine issue of material fact that could lead us to a different conclusion as our objective review of the BWC

9

footage supports Judge LaConte's finding that a valid agreement was entered into by the parties. In addition, plaintiff failed to produce any competent evidence, including medical proofs or otherwise, to support his assertion that he lacked capacity to understand the terms of the oral settlement agreement, which he repeatedly proposed to defendant on the evening in question.

Similarly, we reject plaintiff's wholly unsupported contention that defendant pressured him into a settlement. Rather, we conclude that there is clear and convincing evidence in the record that it was plaintiff who initiated the settlement discussions and repeatedly proffered the settlement offer, as evidenced throughout the BWC footage. Indeed, the footage shows clearly plaintiff stating, "I just want my money right now and just go . . . I just want my money and just go ma'am, please . . . I just want to go home" after defendant did not accept his initial offer to resolve the claims for $500.

Plaintiff next argues that N.J.S.A. 17:29B-15 invalidates the settlement agreement entered into by the parties.[4] We are unconvinced.

N.J.S.A. 17:29B-15 states that:

> No insurance release or waiver of rights by a claimant
> to compensation for personal injury or wrongful death

---

[4] At oral argument before us, plaintiff conceded N.J.S.A. 17:29B-15 may not apply. Because plaintiff's merits brief addressed this issue and for the sake of completeness, we have decided this contention on its merits.

arising from an accident or disaster executed within 30 days after the date on which the accident or disaster occurred shall be enforceable unless the claimant, prior to execution of the release or waiver, receives a written disclosure informing the claimant that he may seek legal representation, and further informing the claimant of his rights pursuant to this act.

. . . .

An insurance release or waiver of rights by a claimant to compensation for personal injury or wrongful death arising from an accident or disaster, and executed within the 30-day period following the accident or disaster, may be reviewed by the claimant or the claimant's attorney and may be rescinded within the 10-day period following the execution of the waiver or release by the claimant. Any consideration or thing of value which has passed between the parties prior to rescission of a release or waiver shall be returned. An insurer may withhold payment of the proceeds from settlements made within the 30-day period until the 10-day waiting period has expired.

[N.J.S.A. 17:29B-15(a), (c).]

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). Furthermore, "[w]e ascribe to the statutory words their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (first citing

11

<u>Lane v. Holderman</u>, 23 N.J. 304, 313 (1957); then citing <u>Chasin v. Montclair State Univ.</u>, 159 N.J. 418, 426-27 (1999)).

A plain meaning reading of the statute shows that it was intended to protect against an injured party signing a waiver or release with an insurance company within 30 days of an accident or injury, not to apply to private party settlement agreements, as occurred here. The statute makes reference to "no <u>insurance release or waiver</u> of rights" and that "an <u>insurance release or waiver</u> of rights . . . executed within the 30-day period following the accident or disaster, may be reviewed by the claimant or the claimant's attorney. . . ." (Emphasis added).

Based on this clear language, we conclude the legislature intended the statute to apply to agreements between an individual party settling claims with an insurance company. In this instance, the statute is inapplicable as plaintiff did not sign a release or waiver with an insurance company.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

12